**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                  :
                                  :
MASSACHUSETTS MUTUAL LIFE     :    Civil Action No.
INSURANCE COMPANY,          :    07-2473 (FLW)
                                  :
             Plaintiff,   :
                                  :    **OPINION**
      vs.                 :
                                  :
                                  :
DONALD J. MARINARI and       :
JOHN DOES I - X,           :
                                  :
             Defendants.  :
_____:

**WOLFSON, United States District Judge**:

This matter comes before this Court upon a motion filed by Plaintiff Massachusetts Mutual Life Insurance Company ("Plaintiff" or "MassMutual") for partial summary judgement on Defendant Donald J. Marinari's ("Defendant" or "Marinari") First, Second, Third and Fifth counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, bad faith, and intentional infliction of emotional distress, pursuant to Fed. R. Civ. P. 56(c). This action arises out of Plaintiff's termination of Defendant's benefits under a policy of disability income insurance (the "Policy" or the "Plan") purchased by Marinari's former employer and issued by MassMutual. Defendant opposes the

1

motion with regard to the claim for intentional infliction of emotional distress ("IIED Claim"),[1] and cross-moves for summary judgement on Plaintiff's claims pursuant to the New Jersey Insurance Fraud Prevention Act, <u>N.J.S.A.</u> 17:33A-1, <u>et. seq.</u> ("NJ Fraud Act") in Counts One, Two and Three of the Amended Complaint. Both parties' motions are based upon ERISA preemption. For the reasons that follow, the Court finds that Defendant's IIED Claim is preempted by ERISA, and Plaintiff's claims under the NJ Fraud Act are not preempted by the statute.

## I.   **Overview**

For the purposes of this motion, the Court recites only relevant facts. The following facts are not disputed by the parties unless otherwise noted. Defendant was employed as President and Chief Executive Officer ("CEO") of National Telephone Directory Corporation ("NTDC"). <u>See</u> Mangal Aff., Ex. 2. As part of its benefits package for its executive employees, NTDC purchased on behalf of Defendant a long-term disability insurance policy from Connecticut Mutual Life Insurance Company, predecessor-in-interest to Plaintiff. <u>See</u> Mangal. Aff. ¶ 4. NTDC made all premium payments on the Policy for Defendant, and the parties agree that the Policy is part of a plan governed by ERISA. <u>See</u> <u>Id.</u>, ¶ 12.

---

[1]Defendant voluntarily dismisses his First, Second and Third counterclaims for breach of contract, implied covenant of good faith and fair dealing, and bad faith.

Defendant served as President and CEO of NTDC until March 1, 2000, when he was deemed totally disabled, and he left the company. <u>See</u> Marinari Dec., ¶ 4. Defendant's disability was diagnosed as "major, untreatable, and medically unresponsive depression," and he was declared unable to perform his "main duties" as defined by the Policy.[2] <u>See</u> MassMutual letter dated July 6, 2001. As a result of the diagnosis, Defendant began receiving disability benefit payments from Plaintiff beginning on January 28, 2001. Between August 2002 and February 2006, Plaintiff sent Defendant multiple Disability Progress Reports (twelve in total), in which Plaintiff asked Defendant, "[h]ave you performed any work in any occupation since the date of your last report?" On each of these reports, Defendant responded "no" to this question. <u>See</u> Mangal Supp. Aff., Ex. A.

On May 12, 2006, Plaintiff received information from a former employee of Community Square Publications, LLC ("CSP"), alleging that Defendant was then and had been working full-time as the CEO of CSP, which was allegedly founded by Defendant and his wife subsequent to Defendant's departure from NTDC. From this information, Plaintiff conducted an investigation and allegedly found that: 1) both CSP and Defendant filed for bankruptcy in

---

[2]Under the terms of the Policy, benefits are issued to the policy-holder if and when "[t]he Insured is Totally Disabled" and "cannot perform the main duties of his/her Occupation due to Sickness or Injury. The Insured must be under a Doctor's Care." <u>See</u> Marinari Dec., ¶ 1 (quoting the terms of the policy).

February 2006; 2) in the bankruptcy proceeding Defendant testified that he was employed by CSP; and 3) Defendant's sworn testimony was consistent with statements of the former employee that Defendant worked for CSP on a full-time basis. See Mangal Supp. Aff., Ex. D. As a result of this investigation, Plaintiff concluded that Defendant was not, and had not been, disabled since September 2002, and consequently, ceased disability benefits payments on May 25, 2007. See Mangal Supp. Aff., Ex. E. Plaintiff also demanded repayment of the benefits issued to Defendant for the period between September 1, 2002 through May 2007. Id.

After Defendant's refusal to repay, Plaintiff commenced the present action against Defendant under the NJ Fraud Act, claiming that Defendant defrauded Plaintiff by falsely representing his disability in order to receive insurance payments. In his Answer and Counterclaims, Defendant asserted, inter alia, that during Plaintiff's investigation, Plaintiff's investigator verbally assaulted and berated Defendant, causing Defendant to carry out his suicidal thoughts, and subsequently hospitalized for severe depression. Specifically, in the Fifth Counterclaim, Defendant asserts an IIED claim arising out of Plaintiff's allegedly improper filing of this action in knowing violation of the Bankruptcy Court's automatic stay provision. However, in the briefing on this motion, Defendant asserts that the IIED claim

4

arises out of the investigator's actions; Defendant does not address the filing of this action in alleged violation of the Bankruptcy stay.  Plaintiff moves to dismiss this claim on the ground that Defendant's IIED Claim, as explicated by Defendant's brief, is preempted by ERISA because the investigator's actions were part of, and related to, the administration of the Policy. Defendant cross-moves for summary judgment on preemption grounds as to Plaintiff's claims under the NJ Fraud Act.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the initial burden of showing the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Ultimately, the moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case.  See Id. at 325.  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for

trial.  *See* *Id.* at 324.  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See* *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under applicable rule of law.  See *Id.*

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party.  *See* *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert.* *denied*, 507 U.S. 912 (1993).  The court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment - even if the quantity of the moving party's evidence outweighs that of its adversary.  *See* *Id.*  Nonetheless, a party opposing summary judgment cannot merely rest on allegations, general denials, or vague statements.  *See* *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992).  The court's inquiry at the summary judgment stage is the threshold inquiry of determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *See* *Anderson*, 477 U.S. at 250-52.  If the evidence is sufficient to reasonably expect that a jury could return a verdict in favor of plaintiff, that is enough to thwart imposition of summary judgment.  *See* *Id.* at 248-51.

**B.  Express Preemption Doctrine under ERISA**

The Court notes at the outset that Defendant concedes that his counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing and bad faith "relate to" the employee benefit welfare plan established by the Policy, and thus, they are preempted by ERISA.  The only claim at issue in Plaintiff's motion is Defendant's IIED claim in the Fifth Count of his counterclaims.  As to Defendant's motion, Defendant seeks to dismiss Plaintiff's claims under the NJ Fraud Act on the same preemption grounds.

ERISA, with some exceptions not relevant here, preempts state law which relates to any employee welfare benefits plans: "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).[3]  The Supreme Court has given broad meaning to "relate to," stating: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life Ins. Co.

_____

[3]Section 514(a) of the Employee Retirement Income Security Act of 1974 was codified in the United States Code as 29 U.S.C. § 1144(a).  Section 502 of the Act was codified as 29 U.S.C. § 1132.  The Court will reference these sections from both the Act itself as well as the U.S. Code interchangeably throughout the rest of this Opinion.

7

v. Dedeaux, 481 U.S. 41, 47 (1987).  In considering § 514(a), the Supreme Court has stated that the objective of the express preemption provision was "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995). Thus, the "relate to" standard should be broadly applied.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990)(concluding that Congress had "expressly included a broadly worded preemption provision in a comprehensive statute such as ERISA," based on Congress's use of "the words 'relate to' Congress used those words in their broad sense, rejecting more limited preemption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA'") (internal citations omitted).

In that connection, state laws "relate to" an ERISA plan if the law either has a "reference to" or has a "connection with" the plan at issue. See Id.; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983); Way v. Ohio Cas. Ins. Co., 346 F. Supp. 2d 711, 718 (D.N.J. 2004).  Pursuant to Ingersoll-Rand, the Third Circuit instructs that a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan."  1975 Salaried Ret. Plan for Eligible

Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992) (citations omitted).[4]

### C. Defendant's Counterclaim for Intentional Infliction of Emotional Distress

Plaintiff argues that Defendant's IIED claim is preempted by ERISA because the subject matter of the claim relates to the administration of the Policy.  As it appears in the Fifth Counterclaim, Defendant bases his claim on Plaintiff's willful conduct by filing this Complaint against him in knowing violation of the automatic stay arising from Defendant's bankruptcy petition, and for the purpose of harming Defendant, who Plaintiff knew was in a precarious mental state.  See Amended Answer, ¶ 221. In that regard, Defendant alleges that "[MassMutual] knew or should have known that by its willfully violating the automatic stay and filing the initial Complaint on September 25, 2007 that

---

[4]Express preemption under § 514(a) is analytically distinct from complete preemption under § 502.  While ERISA's complete preemption clause is jurisdictional and confers federal question jurisdiction over an action, express preemption is a substantive defense to be applied after the Court establishes jurisdiction. The Third Circuit has explained this distinction in the following manner: "Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." Lazorko v. Penn. Hospital, 237 F.3d 242, 248 (3d Cir. 2000).  Thus, where § 514(a) applies so too does federal law.  To the extent that a claim falling under § 514(a) is not pled under federal law, it is preempted by ERISA. See Santana v. Verizon Commc'ns., 2009 U.S. Dist. LEXIS 85882, at *10-12 (D.N.J. Sep. 17, 2009).

it would harm Marinari." <u>Id.</u>, ¶ 223.  Defendant further alleges that "the plaintiff's conduct was outrageous in that it was able to use detailed, confidential medical information which it had obtained from Marinari to its benefit and to Marinari's detriment." <u>Id.</u>, ¶ 225.  However, for the first time in his brief in opposition to Plaintiff's motion, Defendant points to another part of the Answer and Counterclaims as the basis for his emotional distress claim.  Defendant avers that on October 6, 2006, Plaintiff arranged a meeting which, at Defendant's request, took place at the office of Dr. Roger Granet, Marinari's psychiatrist.  <u>See</u> Answer, ¶¶ 156-58.  The purpose of the meeting was to allow Plaintiff to obtain information regarding Marinari's medical condition in order to determine his disability status. <u>Id.</u>  The meeting was attended by Thomas Moynihan, investigator from MassMutual, Sabitri Mangal, the claims manager, Marinari and Dr. Garnet.  <u>Id.</u>  Allegedly after the introductory remarks, Mr. Moynihan stood in Marinari's face pointing his finger at him and began making accusatory remarks.  <u>Id.</u>, ¶ 160-61.  Defendant further avers that Moynihan took unannounced photographs in Marinari's face, yelled at Marinari and conducted himself in an outrageous manner which exceeded the bounds of decency and professionalism.  Defendant argues that based on these alleged facts, Marinari's IIED claim does not "relate to" the

10

administration of the Policy, but rather it affects ERISA in a remote and tenuous manner.

The Supreme Court in <u>Pilot Life</u> first held that claims for emotional distress arising out of the administration of an ERISA plan are preempted by ERISA.  <u>See Pilot Life</u>, 481 U.S. at 41. Following <u>Pilot Life</u>, the Third Circuit in <u>Pane v. RCA Corp.</u>, 868 F.2d 631, 635 (3d Cir. 1989), reinforced the principle that "[s]tate law claims of emotional distress arising out of the administration of an ERISA employee benefit plan are also preempted . . . .  Furthermore, to the extent that these state law claims would support an award of punitive damages, the claim for such relief is also preempted." <u>Id.</u> at 635.

Following <u>Pane</u>, various district courts in this circuit have routinely held that claims for intentional infliction of emotional distress are preempted by ERISA.  <u>See</u>, <u>e.g.</u>, <u>Ford v. Unum Life Ins. Co. of Am.</u>, 2009 U.S. App. LEXIS 24514 (3d Cir. Nov. 9, 2009) ("[s]tate law claims such as those raised by Ford in her complaint -- breach of contract, negligence, and intentional infliction of emotional distress -- would ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan"); <u>Ludwig v. Carpenters Health & Welfare Fund of Phila. & Vicinity</u>, 2009 U.S. Dist. LEXIS 85996 (E.D. Pa. Sept. 18, 2009) ("Because the plaintiff's state law claims of emotional, psychological, physical, and financial distress are inextricably

11

linked to the Funds' COBRA coverage and disbursement, the claims are preempted"); <u>Martellacci v. Guardian Life Ins. Co. of Am.</u>, 2009 U.S. Dist. LEXIS 13773 (E.D. Pa. Feb. 20, 2009); <u>Pappa v. Unum Life Ins. Co. of Am.</u>, 2008 U.S. Dist. LEXIS 21500 (M.D. Pa. Mar. 18, 2008); <u>Way</u>, 346 F. Supp. 2d at 718.

In support of his position that his IIED claim is too tenuous to be considered "relating to" the ERISA plan, Defendant cites to <u>Kelly v. International Business Machines Corp.</u>, 573 F.Supp. 366 (E.D. Pa. 1983); <u>Benvenuto v. Connecticut General Life Insurance Co.</u>, 643 F.Supp. 87 (D.N.J. 1986) and <u>Shiffler v. Equitable Life Assurance Society of the United States</u>, 838 F.2d 78 (3d Cir. 1988). However, Defendant relies upon case law that pre-dates the Third Circuit's decision in <u>Pane</u>. As such, this Court questions the viability of the rationale behind these cases. In fact, the court in <u>Huss v. Green Spring Health Servs., Inc.</u>, 18 F. Supp. 2d 400, 404 n.10 (D. Del. 1998), discussed the interplay of these cases relied upon by Defendant here and their precedential value after <u>Pane</u>:

> The Court is aware of the apparent inconsistency between this holding as it pertains to the intentional infliction of emotional distress and the holding or commentary in <u>Kelly v. International Business Machines Corp.</u>, 573 F. Supp. 366 (E.D. Pa 1983), <u>aff'd mem.</u> 746 F.2d 1467 (3d Cir. 1984), and <u>Shiffler v. Equitable Life Assurance Society of the United States</u>, 838 F.2d 78, 82-83 n.6 (3d Cir. 1988). The Court agrees with the district court in <u>Pane v. RCA Corp.</u>, 667 F. Supp. 168 (D.N.J. 1987), aff'd, 868 F.2d 631 (3d Cir. 1989), however, that the Third Circuit Court of Appeals' unpublished

> memorandum opinion in <u>Kelly</u> is not binding.  <u>See</u> 667
> F. Supp. at 173 (citing <u>Aetna Life & Casualty Co. v</u>
> <u>Maravich</u>, 824 F.2d 266, 269 (3d Cir. 1987)).  In
> addition, <u>Kelly</u> pre-dated some important Supreme
> Court and circuit court decisions, which are
> discussed in <u>Pane</u> and/or by this Court. <u>Shiffler</u>'s
> apparent reinforcement of the Kelly holding before
> <u>Pane</u> but after several of the relevant Supreme Court
> opinions gives the Court greater pause. Nevertheless,
> Pane clearly and explicitly holds what <u>Shiffler</u>
> seemingly contradicts in a footnote.

<u>Id.</u>  Based upon a review of the relevant case law and the facts

here, this Court rejects Defendant's argument that the alleged

harassing conduct committed by Plaintiff's agents are not part of

the administration of the Plan.

Keeping in mind that the "relate to" language of ERISA should

be defined broadly, the Court finds Defendant's IIED claim "relates

to" the Policy.  The factual allegations in support of this claim,

as set forth in Defendant's Fifth Counterclaim, involved

Plaintiff's commencement of this action, in violation of the

bankruptcy stay, which caused Defendant emotional distress.

However, seemingly grasping at straws, Defendant now alleges that

his cause of action for emotional distress is based upon

allegations regarding Plaintiff's investigative techniques.  Even

taking these additional allegations as the basis for his IIED

claim, Defendant's argument has no merit.  Indeed, the meeting took

place for the purpose of determining whether Defendant was totally

disabled or whether Defendant has engaged in employment in

violation of the terms of the Policy.  In addition to the presence

of Plaintiff's agents, Defendant and his doctor were present.  In that regard, the meeting was a part of the evaluation process of Defendant's disability status in connection with his ERISA benefits.   According to the allegations of Defendant's counterclaim, Plaintiff's representatives questioned Defendant about his involvement with the bankrupt entity and other companies. Thus, the IIED claim here "relates to" the ERISA plan because the alleged "outrageous" conduct occurred during the administration of the Policy and for the purposes of determining Defendant's entitlement to benefits.  The following cases support the Court's conclusion that investigatory conduct are associated with the administration of an ERISA plan for preemption purposes: <u>Pappa</u>, 2008 U.S. Dist. LEXIS 21500 at *51-52 (plaintiff brought an IIED claim against defendant insurance company for trespassing onto her property and videotaping her bedroom and bathroom windows.  The court held that the alleged trespass arose from the administration of the plan); <u>Martellacci</u>, 2009 U.S. Dist. LEXIS 13773 at *10 (Plaintiff alleges that his emotional distress stems from false negotiations and meetings with his employer and attorney pertaining to the administration of the policy in question; the court held that these negotiations and meeting relate to the ERISA policy); <u>Ramer v. S. Cal. Gas Co.</u>, 6 Fed. Appx. 577,  580 (9th Cir. 2001)("[i]ndeed, Ramer's claims for emotional distress are entirely preempted; they allege emotional harm resulting from telephone

calls by Torres and from her undercover investigation of him. These [investigative] activities are entirely connected with administration of the Disability Plan").

Finally, Defendant attempts to raise a factual dispute by arguing that the meeting between him and Plaintiff's agents was not routine and therefore, "not protected under the administration of the disability policy."  The Court finds this argument specious. Even if meetings were not routinely held during the administration of Defendant's ERISA benefits, this meeting was necessary for MassMutual to investigate the adverse information provided by a former employee of CSP, the company for which Defendant allegedly worked during his disability period.  As such, any alleged imprudent comments and behavior by the investigator were made and exhibited in the course of administering Defendant's ERISA benefits, making it subject to ERISA preemption.  Accordingly, the Court finds that Plaintiff's IIED claim is expressly preempted by ERISA.

As a final note, the Court's holding is limited to the facts of this case.  There may be a circumstance in which a plaintiff pleads intentional infliction of emotional distress that might be considered too remote or tenuous to relate to an ERISA plan. However, because the factual basis of Defendant's IIED Claim clearly relates to the administration of the Policy at issue, the IIED claim here is preempted.

### C.   **Plaintiff's Claims Pursuant to the NJ Fraud Act**

Defendant moves to summarily dismiss Counts I-III of Plaintiff's Complaint arising under the NJ Fraud Act. Also invoking the express preemption doctrine, Defendant maintains that these Counts are preempted by ERISA because they relate to the Policy. Defendant erroneously reasons that causes of action brought under the NJ Fraud Act are related to the Plan because they are predicated upon the existence of an ERISA plan and that the resolution of Plaintiff's fraud claims will undoubtedly involve referencing plan documents. The Court finds Defendant's argument without merit.

To begin, the NJ Fraud Act, <u>N.J.S.A.</u> 17:33A-2, entitled "Purpose of act" provides:

> The purpose of this act is to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims.

To this end, the Act declares certain conduct to be unlawful, and provides a remedy to those damaged by insurance fraud. A person or a practitioner violates this Act if he:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c.174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

16

(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c.174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled.

N.J.S.A. 17:33A-4.

Pursuant to these provisions of the NJ Fraud Act, Plaintiff brings the instant action to collect disability income benefits that were paid to Defendant as a result of his alleged fraudulent conduct by falsifying his disability application.  Exercising the police power of the State, the statutory scheme underlying the NJ Fraud Act does not in any way relate to the administration of the Plan. Indeed, a state law relates to an ERISA plan (1) if it is specifically designed to affect employee benefit plans; (2) if it singles out such plans for special treatment; or (3) if the rights or restrictions it creates are predicated on the existence of such a plan.  United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Memorial Hospital, 995 F.2d 1179, 1192 (3d Cir. 1993). Moreover, "a state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate

or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states." Id.

In analyzing the above factors, the Third Circuit has instructed that "as in any preemption analysis, 'the purpose of Congress is the ultimate touchstone.'" Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 745 (1985). To that end, the Supreme Court discussed at length the Congressional intent behind the ERISA preemption clause in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987). In Fort Halifax, the Court was faced with the question of whether ERISA preempted a Maine statute requiring employers, in the event of a plant closing, to provide a one-time severance payment to employees not covered by an express contract providing for severance pay. In the course of holding that the Maine statute was not preempted, the Court explained the Congressional intent behind ERISA's preemption clause:

> [A]n employer that makes a commitment systematically
> to pay certain benefits undertakes a host of
> obligations, such as determining the eligibility of
> claimants, calculating benefit levels, making
> disbursements, monitoring the availability of funds
> for benefit payment, and keeping appropriate records
> in order to comply with applicable reporting
> requirements. The most efficient way to meet these
> responsibilities is to establish a uniform
> administrative scheme, which provides a set of
> standard procedures to guide processing of claims and
> disbursement of benefits. Such a system is difficult
> to achieve, however, if a benefit plan is subject to
> differing regulatory requirements in differing

18

> States.  A plan would be required to keep certain
> records in some States but not in others; to make
> certain benefits available in some States but not in
> others; to process claims in a certain way in some
> States but not in others; and to comply with certain
> fiduciary standards in some States but not in others.
>
> * * * * * * *
>
> It is thus clear that ERISA's pre-emption provision
> was prompted by recognition that employers
> establishing and maintaining employee benefit plans
> are faced with the task of coordinating complex
> administrative activities.  A patch-work scheme of
> regulation would introduce considerable
> inefficiencies in benefit program operation, which
> might lead those employers with existing plans to
> reduce benefits, and those without such plans to
> refrain from adopting them. Pre-emption ensures that
> the administrative practices of a benefit plan will
> be governed by only a single set of regulations.

Fort Halifax, 482 U.S. at 9, 11.  It is with this Congressional

purpose in mind that this Court must apply the preemption doctrine.

United Wire, 995 F.2d at 1192.

Moreover, ERISA preemption is not unlimited.  "Some state

actions may affect employee benefits in too tenuous, remote, or

peripheral a manner to warrant a finding that the law 'relates to'

the plan."  Shaw, 463 U.S. at 100 n.21.  Further, "the absence of

a direct nexus to [an] ERISA plan[]" will put a cause of action

"beyond the scope of § 514 preemption."  United Wire, 995 F.2d at

1195.  A state law cause of action is expressly preempted by ERISA

where a party, in order to prevail, must prove the existence of, or

specific terms of, an ERISA plan.  Ingersoll-Rand, 498 U.S. at 139.

With these legal precepts in mind, the Court will analyze the factors numerated above.

First, the NJ Fraud Act is not "specifically designed to affect employee benefits plans." As referenced previously, the Act was specifically designed to "confront aggressively the problem of insurance fraud in New Jersey." The State achieves this goal by regulating all types of insurance and establishes a legal duty upon insurance claimants to submit true and accurate claim information. Second, under the Act, all insurance policies are treated the same irrespective of the type of policies; as such, employee benefits plans are not singled out. Next, the Act does not create, nor does it seek to regulate, any rights or restrictions that are predicated upon an ERISA plan. Rather, the focus is placed on the conduct of the insureds when seeking insurance benefits. Finally, the NJ Fraud Act clearly does not dictate or restrict the choices available under ERISA plans, benefits, structure or administration, nor does it affect the ability of a plan to function simultaneously in a number of states.

In sum, the nature of the NJ Fraud Act is to prevent and deter fraud; such purpose has no "direct nexus" to the administration of the Plan because this type of statutory duty is independent of rights and obligations arising under ERISA. More simply stated, the NJ Fraud Act imposes duties that are separate and independent from the contractual duties set forth in the ERISA plan. In this regard,

the NJ Fraud Act represents New Jersey's efforts to protect the integrity of insurance in the state.  Accordingly, any reference to the Plan in resolving Plaintiff's claims in this context is too remote for this Court to find that the NJ Fraud Act relates to the administration of the Plan.[5]  <u>See, e.g., Trustees of the AFTRA Health Fund v. Biondi</u>, 404 F.3d 765 (7th Cir. 2002); <u>Geller v. County Line Auto Sales, Inc.</u>, 86 F.3d 18 (2d Cir. 1996) (reference to plan's terms was insufficient to cause preemption of a common law fraud claim against a participant of the plan).

Nevertheless, Defendant argues that the NJ Fraud Act claims are preempted under the doctrine of conflict preemption.  Without citing to any relevant authorities for such a proposition, Defendant simply posits that because Plaintiff is attempting to use the NJ Fraud Act to obtain compensatory and punitive damages that are beyond the remedies offered under ERISA, its claims should be preempted.  Defendant reasons that because Plaintiff is only limited to the remedies permitted pursuant to ERISA, its NJ Fraud Act claims conflict with ERISA.  Moreover, Defendant argues that because ERISA already imposes a duty under the Policy to be truthful, the NJ Fraud

---

[5]This Court in <u>Horizon Blue Cross Blue Shield v. East Brunswick Surgery Center</u>, 623 F. Supp. 2d 568, 576 (D.N.J. 2009), albeit under § 502 preemption analysis, has determined that claims under the NJ Fraud Act are not preempted by ERISA precisely because those claims arise from duties that are independent of an ERISA plan and "do not implicate the civil enforcement mechanisms of ERISA."  <u>Id.</u>

Act does not impose any additional duty.  Therefore, the Act should be preempted.

Defendant misapplies the conflict preemption doctrine. Conflict preemption occurs when a state law makes it impossible to comply with both state and federal law or when the state law stands as an obstacle to the accomplishment and execution of Congress' purposes and objectives.  HI Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004).  As a fiduciary of the Plan, Plaintiff's remedies under ERISA are limited to those authorized by ERISA § 502(a)(3), which provides that a civil action may be brought by a participant, beneficiary, or fiduciary "A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) redress such violations or (ii) to enforce any provisions of the this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

Here, the doctrine of conflict preemption does not apply. Plaintiff is not acting in its fiduciary capacity when asserting its NJ Fraud Act claims against Defendant.  Rather, it is an insurer who seeks redress for Defendant's fraudulent conduct.  In other words, the compensatory and punitive damages Plaintiff seeks are separate and distinct from the remedies set forth in ERISA.  In particular, Plaintiff is not seeking an injunction or preventing violations of ERSIA or the Plan.  Similarly, Plaintiff is not seeking to redress

any violations of the terms of the Plan, or to enforce any provisions of ERISA or the terms of the Plan.  Accordingly, the NJ Fraud Act claims do not duplicate, supplement, or supplant the ERISA civil enforcement remedy, see Horizon, 623 F. Supp. 2d at 576, and therefore, conflict preemption does not apply.

As the Court has found that the NJ Fraud Act claims are not preempted by ERISA, the Court need not address arguments made by the parties that the NJ Fraud Act is exempted from preemption pursuant to § 1144(b)(2)(A).

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion for partial summary judgment on Counts One, Two, Three and Five of Defendant's Counterclaims is GRANTED, and Defendant's cross-motion for summary judgment on Counts One, Two and Three of Plaintiff's Amended Complaint is DENIED.


December 29, 2009                    /s/ Freda L. Wolfson
                                    The Honorable Freda L. Wolfson
                                    United States District Judge


23